## TERRY VS. ROSELL.

1. PART PERFORMANCE:

   Nothing is part performance of a contract which does not put the party in a situation which would be a fraud upon him, if the contract be not performed.

2. MORTGAGE: *Legal estate.*

   As between mortgagor and mortgagee, the legal estate is in the mortgagee, but as to all others it is in the mortgagor, and may be conveyed by him subject to the mortgage.

3. *Equity.*

   A deed executed to perfect a prior equitable title, of which a prior grantee had actual or constructive notice at the time of his deed, will, combined with such prior equity, prevail over the older deed.

4. INJUNCTION: *When granted against trespassers.*

   Injunction will not be granted to restrain simple trespasses unless persistently repeated and of long continuance.

5. SECURITIES: *Marshaling of.*

   A junior incumbrancer holding a legal title to land embraced in a mortgage with other lands, and whose rights are in danger from the failure of the mortgagee to foreclose, may compel the mortgagee to first exhaust the other lands.

6. PRACTICE: *Pleading.*

   Under the Code practice multifariousness can be corrected only by motives to strike out—not by demurrer.

APPEAL from Pulaski Chancery Court.

Hon. JOHN R. EAKIN, Chancellor.

*Terry* for appellant.

*Cockrill contra.*

TURNER, J.:

This is a bill in equity, filed in the Pulaski Chancery Court, by George F. Rosell against Francis A. Terry, Cradock R. Vaughan and Evelina Vaughan, his wife. The material facts of the cause as set forth in the bill, are: That early in the year 1868, the defendant, Cradock R. Vaughan, by parol, bargained and sold to the plaintiff, Rosell, the fractional

Terry vs. Rosell.

part of section nine, township one, range eleven west, containing ninety-six acres of land, more or less, situate in the County of Pulaski, State of Arkansas. That in pursuance of said sale the plaintiff paid to the defendant, Cradock R. Vaughan, the sum of $2000, as part of the purchase money, and in the fall and winter of that year entered upon the said land by and with the consent of the defendant Vaughan, and in pursuance of the sale, made valuable improvements thereon, having built and repaired fences and erected cabins on the land, in order that it might be prepared for cultivation and ready for the accommodation of laborers in time for making a crop thereon for the year 1869. That in the month of December, 1868, or early in January, 1869, the plaintiff moved from certain lands which he had previously rented from the defendant Terry, and in pursuance of the said parol conveyance entered upon and took possession of said first mentioned tract of land and made a crop thereon in the year 1869; that in the latter part of that year he paid to the defendant Vaughan the sum of eight hundred and eighty dollars, the balance due of purchase money for said tract of land. That after repeated promises previously made, the defendant Vaughan, on the 13th of April, 1873, executed and delivered to the plaintiff a warranty deed in fee simple to the said land, in pursuance of the original parol sale, the defendant Evelina, wife of the defendant Vaughan, joining in said deed and relinquishing her dower in the land previously conveyed. That the plaintiff continued in the possession of the land during the year 1869, and up to and after the 16th of February, 1870, during which time, and prior to the last mentioned sale, he continued to carry on and add to the improvements previously commenced by him, amounting in value to at least $1000, which was accomplished by the labor, industry and personal attention and presence of the plaintiff on the land.

That on the 16th of February, 1870, while the plaintiff was still in possession of the land, the defendant Vaughan executed a conveyance by way of mortgage, to the defendant Terry for certain lands, including as a part of the lands so mortgaged the identical tract of land first mentioned. That said mortgage was given, as alleged, to secure the payment of $4000. That the mortgage of the said ninety-six acres of land by the defendant Vaughan to his co-defendant Terry, was without right and a fraud upon the plaintiff's right in the premises, which was known to the defendant Terry at the time the mortgage was executed. That said mortgage is now an incumbrance on the land, and serves to embarrass, cloud and obscure the plaintiff's title, and that he is unable, as he alleges, to dispose of the land as he could do if said incumbrance did not exist.

That the supposed debt secured by said motgage bears interest at the rate of 24 per cent. per annum from the 16th of February, until the 1st of January, 1871, and if not then paid a penalty of 12 per cent. per annum in addition thereto, was to be imposed upon the defendant Vaughan, and secured by the mortgage. That plaintiff had no notice thereof, and no actual notice of the execution of the mortgage until after his deed to the premises 'had been executed, delivered and recorded. That the defendant Vaughan made payments on the debt secured by said mortgage, and it ought to be now greatly reduced, but plaintiff is advised that the defendant Terry has applied the sums so paid to the liquidation of the interest and penalty before mentioned, leaving the original debt and incumbrances on said land, which the plaintiff alleges is a fraud upon his rights. That the other lands covered by the mortgage are sufficient to secure the balance of the debt due. But that if the exorbitant rate of interest aforesaid is secured by the mortgage, and constitutes an encumbrance on the

land, the debt will in a short time grow to such an amount that the plaintiff will be wholly unprotected in his rights.

That on the 23d day of March, 1874, the defendant filed his bill in this court to foreclose the equity of redemption of the said Vaughan in all the lands covered by said mortgage, and that the plaintiff was made a party defendant thereto. That the plaintiff proposed to the defendant Terry, that he would not file his answer or cross-bill if the said Terry would agree, that in taking his decree, and in the sale of the said lands thereunder, he would resort to other lands embraced in the mortgage before going upon those first mentioned. That the defendant Terry assented thereto. That afterwards, in the month of January, 1875, while plaintiff was resting under said agreement, the said defendant Terry, without notice to the plaintiff, attempted to enter upon the lands owned and possessed by the plaintiff as aforesaid, and is claiming possession of the same under the mortgage, and is disturbing and embarrassing the plaintiff's tenants, who are in possession of said lands under the plaintiff. That the bill filed by defendant Terry was on his own motion dismissed, on the —— day of February, 1875, without prejudice.

The bill concludes with a prayer :

I. That the mortgage be cancelled and declared void in so far as the tract of land purchased by plaintiff as therein set forth, is concerned, and that the defendant Terry be perpetually enjoined from setting up any right thereunder, or holding the same as a cloud upon the plaintiff's title.

Or II. That the defendant Terry be required to render an account of the amount lawfully due and an incumbrance upon the said land, under his aforesaid mortgage, and that he be required to foreclose his mortgage, and have resort first to the other lands described therein before touching the lands purchased as aforesaid by plaintiff.

31

III.   That the defendant, Terry, be restrained from interfering in any manner, with plaintiff's possession of said land until this suit is determined.

IV.   And for all other relief that to the court may seem meet and proper.

The plaintiff exhibited with his bill the mortgage from Vaughan to Terry, and the deed of conveyance from Vaughan to plaintiff, and made them a part thereof.

The defendant, Francis A. Terry, demurred to the plaintiff's bill and assigned the following causes of demurrer:

I.   To so much of the plaintiff's bill as seeks to have the said defendant's mortgage cancelled and declared void as to the lands claimed by said plaintiff in his said bill, and to enjoin the said defendant forever from setting up any right thereunder, or holding the same as a cloud upon said plaintiff's title, the defendant demurs, and for cause shows:

*First*—That the facts set up in said bill in support of said prayer, disclose a good cause of action at law, and the said plaintiff fails to allege or show any reason why he is not in a situation to establish his alleged right to a prior conveyance to the land claimed in his bill by an action at law, before resorting to equity, to have said defendant's mortgage cancelled and declared void.

*Second*—That the facts set up in said bill in support of said prayer, show that the said plaintiff claims in direct opposition to defendant's right, by an illegal parol conveyance accompanied and completed by entrance, delivery of possession and payment of purchase money, all prior to the execution of defendant's mortgage, and adverse to the same, and charging such notice on defendant as would render said plaintiff's title by such conveyance absolute and perfect at law without the formal execution and delivery of any instrument or deed in writing, thus raising a question of title only determinable in a court of law.

*Third*—That the facts set up in said bill, in support of said prayer, show that said plaintiff seeks to have an instrument cancelled and declared void upon the ground that the same is a cloud upon his title; but fails to show that his title has ever been established by any appropriate action at law, or to allege any reason why he is not in a situation to have the same established at law before coming into a Court of Chancery to remove a cloud therefrom.

*Fourth*—That the facts set up in said bill, in support of said prayer, shows that said plaintiff seeks to have an instrument cancelled and declared void, and to enjoin the defendant after the same shall have been done, from committing acts that would amount to simple trespass, for which there would be remedy at law, and fails to allege any reason why he cannot prosecute the same.

*Fifth*—That the facts stated in said bill in support of said prayer, are not sufficient to constitute a cause of action to have the defendant's mortgage cancelled and declared void in any part, or to restrain the said defendant from the exercise of any of his rights thereunder.

II.   To so much of said plaintiff's bill as seeks to compel the said defendant to render an account of the amount of principal and interest due him, and to compel a foreclosure, and resort to the lands covered by said defendant's mortgage before resorting to that portion claimed by said plaintiff, and to restrain the said defendant from the exercise of any of the rights accruing to him under said mortgage, or said portion of lands *pendente lite*, the said defendant demurs, and for cause shows:

*First*—That the facts stated are not sufficient to constitute a cause of action for the purpose of the relief prayed.

*Second*—That the facts stated in the plaintiff's bill fail to show any connecting link of equity between said defendant and said

plaintiff that would entitle him to an equitable marshaling of the securities held by the said defendant, the said plaintiff standing upon an adverse claim and not in the light of subsequent creditor, or mortgagee submitting his equities under the mortgage he seeks to have foreclosed.

*Third*—That the facts stated in the bill are not sufficient to constitute a cause of action for the purpose of compelling an account, the said plaintiff having failed to show any subsisting trust relation between the said defendant and himself, and having by direct averment placed himself outside of any such equitable relation, by claiming adverse to the said defendant, and by absolute and independent title prior to the instrument under which the debt and interest accrued of. which he prays to have account.

*Fourth*—That the facts stated in the bill are not sufficient to entitle plaintiff to a temporary injunction *pendente lite*, he having nowhere alleged that the defendant is irresponsible or insolvent, or that great and irreparable damage is likely to result unless the same is granted.

*Fifth*—That the facts stated in the bill are not sufficient to entitle the plaintiff to a temporary injunction, he having a complete remedy at law, and having failed to allege any reason why he failed to resort to the same.

And for further cause, the defendant demurring to the whole bill, says, that the same is multifarious and otherwise defective in substance and substantial matters of form, and shows that the said plaintiff having brought his bill in chancery, with a prayer of having the alternate relief of having an instrument of mortgage cancelled an declared void, and account and foreclosure under the same, in case it be not found invalid, has failed to frame his said bill with the proper double aspect necessary in order to present directly to the court the question of its validity or invalidity upon the alternative of which his demand for relief depends,

and that having so failed to 'submit that question in its proper form by apt averments in his bill, the demands set up thereon are inconsistent one with the other, and the second of them inconsistent with the case made by and in the said bill.

At the October Term of the court, 1875, the plaintiff filed an amended bill, in which he states, in substance, that in December, 1874, or early in January, 1877, he leased the said tract of ninety-six acres of land in his original bill described, by instrument of writing, to one Paxton, for the period of one year, for the yearly rent of fifteen bales of cotton; that said rent was due and payable on the 1st of November and the 15th of December; that the contract of lease was made and executed, and the said Paxton put in possession of the said land prior to the time the defendant Terry claims to have entered upon the land under forfeiture of mortgage. That the instrument of writing is now in possession of said Paxton, and plaintiff has been unable to obtain the same. That the defendant has notified the said Paxton that he is entitled to the rents of said land, and claims to be in possession of the same. Plaintiff denies that he is, or ever has been in possession thereof, but states that the said Terry is preventing him from collecting the rents, and is carrying off the cotton and will continue to do so unless restrained therefrom.

The record shows that in the progress of the cause affidavits were filed; a temporary injunction or restraining order granted, and a motion thereupon made by the defendant to dissolve or modify the same, and motion overruled.

On the 17th of May, (April Term,) 1875, the defendants filed their motion to force the plaintiff to elect between two matters which he will litigate, and afterwards, on the 1st of July, at the same term, said motion was overruled by the court, and on the 8th of March, 1876, both parties being before the court, the defendants elected to stand on their demurrer and motion to

elect, and declined to answer further, whereupon the plaintiff asked for a decree, which the Chancellor proceeded to render, finding that the plaintiff, George F. Rosell, is now the legal and equitable owner, and was at the time of the execution of the mortgage from the said Cradock R. Vaughan and wife, to the said Francis A. Terry, the equitable owner of the fractional part of section nine (9), township one (1), north of range eleven (11) west, containing ninety-six acres more or less, bounded on the north by the Arkansas River, on the south by Fourche Creek, and the lower field of the Dick Fletcher Farm, on the east by lands belonging to the estate of Dick Fletcher, and on the west by lands of J. H. Vaughan, and that his equity was prior to any right acquired by the said Francis A. Terry, under the said mortgage from C. R. Vaughan; whereupon it was decreed by the court that the said tract of land be released from the lien of the said mortgage executed by the said Cradock R. Vaughan and wife to Francis A. Terry, and that all the right and title of the said Cradock R. Vaughan and Evelina Vaughan, his wife, in and to said tract of land, be divested out of them and vested in the said George F. Rosell, and his title thereto quieted as to the said Francis A. Terry, and it was further decreed that the said Francis A. Terry be perpetually enjoined and restrained from in any manner interfering with the said George F. Rosell in the peaceable possession and enjoyment of said land under the said mortgage.

To which decree defendants excepted, and took an appeal to this court.

The first, second, third, fourth and fifth counts of demurrer, though varied slightly in form, are in substance the same, and question fully the sufficiency of the bill to warrant the relief prayed for. To enable us, then, to determine the question presented for our consideration, it becomes necessary to inquire into

the effect of the parol purchase of the land in controversy. What interest or estate in the land did plaintiff acquire?

Wherever the English Statute of Frauds has been adopted, as it has been in Arkansas, a parol contract is void at law, and conveys no legal estate to the purchaser. While this is true, and while the policy and purport of the statute were to prevent frauds and perjuries, it was early discovered that a vigorous enforcement of the letter of the law would, in many instances, enable an uncionsconable vendor to take advantage of and practice a fraud upon a confiding and unsuspecting vendee, and hence the interposition of courts of equity to mitigate and relieve against the severity of the law, not upon any notion of right to dispense with the statute, but for the purpose of administering equities subservient to its true purposes. Whenever, therefore, there was a part performance of the parol contract, attended by circumstances going to show that it was the intention of both parties to carry out the contract in good faith, courts of equity have not hesitated to decree a specific performance of the contract, notwithstanding the statute of frauds; otherwise, one party would be able to practice a fraud on the other, contrary to the spirit and intention of the statute.

The difficulty of determining what is a part performance of a parol contract in the sense of courts of equity has been a fruitful source of controversy, and the courts have by no means been uniform in their decisions on the subject.

The settled rule now, however, as laid down by Judge Story is: "That nothing is to be considered a part performance which does not put the party into a situation which is a fraud upon him unless the agreement is fully performed." 1 Story's Eq., sec. 761, 12 ed.

Applying the rule and the principles which govern courts of equity in cases of this character, we have no difficulty in coming

to the conclusion that the case presented by the bill is within the rule which governs courts of equity in granting relief in cases of part performance of parol contracts; and we are therefore of the opinion that the plaintiff by said parol purchase from Vaughan acquired an equitable title to the land in controversy, while the naked legal title remained in Vaughan, who could hold the same as trustee for the equitable owner.

It appears that on the 16th day of February, 1870, while the plaintiff was in possession of said land, the said Cradock R. Vaughan conveyed the same, with other lands, by deed of mortgage, to the defendant Francis A. Terry, to secure the sum of $4000, which deed of mortgage was duly recorded.

And it further appears that on the 13th day of April, 1873, the said Cradock R. Vaughan and wife executed to the plaintiff a deed of conveyance in fee simple for the land in controversy, in pursuance of the original parol contract, which was also duly recorded.

The question now presents itself, how the rights of the parties are affected by these conveyances? . As between Vaughan and Terry, the legal estate is considered to be in Terry, as between him and Vaughan, and those claiming under Vaughan, but as to all others Vaughan must be considered as seized of the legal estate, and might well convey to another subject to the mortgage. Waterman's Eden., p. 93.

So, when Vaughan, by deed in fee simple conveyed to the plaintiff, he thereby acquired a junior legal title to the land, which, without reference to the plaintiff's equitable title, would be subject to the rights of the mortgagee, but inasmuch as the plaintiff's equitable title was acquired long before Terry acquired his legal title under the mortgage, the equitable title of the plaintiff was in no wise affected by the mortgage—Terry having at the time of the execution of the mortgage, constructive

Terry vs. Rosell.

if not actual notice of the plaintiff's title. It results therefore, that the plaintiff having a prior and superior equitable title combined with a subsequent legal title, has now the paramount equitable title to the land, to the exclusion of the defendant and all others.

But it is objected that plaintiff by his own showing, is entitled to an adequate remedy at law.

This is to be determined by the nature and the extent of the relief sought.

The prayer of the bill is, that the mortgage from Vaughan to Terry be cancelled and declared void, in so far as the said tract of land is concerned, and that the defendant Terry be perpetually enjoined from setting up any right thereunder, or holding the same as a cloud upon the plaintiff's title. This is the primary purpose of the bill.

True, there is an alternative prayer looking to the foreclosure of the mortgage, and a marshaling of the securities for the benefit of the plaintiff, if the court should be of the opinion that the mortgage was of binding force as against the equities of the plaintiff.

But for the present we shall consider the first branch of the relief sought.

It may be stated generally, that if the remedy at law is effectual and complete, the party cannot resort to a court of equity; otherwise, if the remedy be not adequate and complete, and adapted to the particular exigency. See *Black* v. *Bowman*, 9 Ark., 501.

Injunctions will not be granted to restrain simple trespasses, but, when persistently repeated and of long continuance, courts of equity will interpose to prevent irreparable mischiefs, or to suppress a multitude of suits and oppressive litigation. 2 Story's Eq. Ju., 928 ; 6 Ark., 304.

The power of a court of equity to cancel deeds or other instruments of writing, which are a cloud on another's title, is undoubted, and bills for that purpose are of frequent occurrence. Indeed, it is an important branch of equity jurisdiction.

Judge Story, in referring to it, says: "The whole doctrine of courts of equity on this subject is referable to the general jurisdiction which it exercises in favor of a party *quia timet*. It is not confined to cases where the instrument having been executed is void upon grounds of law or equity, but it is applied even in cases of forged instruments, which may be decreed to be given up without any prior trial at law upon the point of forgery." Story's Eq. Ju., 701.

In this case, the plaintiff, who is in possession, has a junior legal but superior equitable title to land, while the defendant has the senior legal title.

By what means could the plaintiff assert his title in a court of law? He could not bring ejectment or a possessory action against himself, and if he could it would not settle the equitable rights of the parties, and would afford no adequate relief.

In the case of *Branch* v. *Mitchell*, 24 Ark., 431, in some of its features similar to this, the court, in its opinion, used the following language:

"When a party has the only, or the better legal title to land, as against that which he wishes to put at rest, he may obtain or regain possession by an action of ejectment, if he is out of possession; and it is reasonable that equity should decline to interfere when he may obtain all the relief he needs at law. If he is in possession, then, as he can bring no action at law, it is held that he may ask the court of equity to remove a cloud upon his title which makes it less valuable, or may prevent his disposing of it to others. The Court of Chancery will not become a tribunal to try the legal title to land, or, in other words, it will not, without

some special grounds for assuming the jurisdiction, undertake on behalf of the better legal title to remove out of its way an inferior title, legal or equitable.   But whether one holding a junior or inferior legal title, with prior or superior equities, be in or out of possession, it is difficult to conceive on what ground his right to the aid of a court of equity can be denied.   If in possession, he may be ousted by an ejectment; if out, he cannot obtain possession when confronted by the only or older and better legal title.   If in possession, he cannot bring ejectment; out, he cannot maintain it."   See *Apperson* v. *Ford*, 23 Ark., 746 ; *Sale and wife* v. *McLean et al.*, 29 Ark., 612.

According to these principles, which are founded in reason, and upon authority, and which, it is believed, are applicable to the facts of this case, the plaintiff is without remedy at law, and appeals to the only tribunal which can give the relief sought.

That the mortgage is a cloud upon the plaintiff's title is fully shown from the facts set forth in the bill, and the opinion of the court will warrant the interposition of equity to remove the cloud from, and quiet the plaintiff's title to the land.

The objection to the bill, on the ground that the plaintiff has never established his title at law, and fails to show why he is not in a situation to assert his right at law, falls to the ground when it is shown that the plaintiff is without remedy at law, and that a court of equity can alone furnish the relief adapted to his case.

The first, second, third, fourth and fifth causes of demurrer, additionally assigned, and the demurrer to the whole bill, and the motion to elect will be considered together.

These causes of demurrer are ingeniously interwoven and blended with slight variations of phraseology, but mainly presenting the same points of objection to the bill, which may be resolved into two principal objections.

I. It is objected to the bill, that it seeks to compel the defendant to render an account of principal and interest due him, to foreclose his mortgage, and resort to the other lands covered by the mortgage before resorting to that portion claimed by the plaintiff.

It is further objected to the bill that it is multifarious and shows that the plaintiff, having brought his bill in chancery with a prayer of having the alternative relief of having an instrument of mortgage cancelled and declared void, and an account and foreclosure under the same, in case it be found not invalid, has failed to frame his bill with the proper double aspect necessary in order to present directly to the court the question of its validity or invalidity.

Are these valid objections to the sufficiency of the bill? The prayer for relief is in the alternative, and this form of prayer is of frequent occurrence.

In *Cotton et al.* v. *Ross et al.*, 2 Paige, 396, Chancellor Walworth says: "There is no doubt of the right of a complainant, in certain cases, to frame a bill with a double aspect, where it is doubtful what relief he may be entitled to on the facts. In such a case, the prayer for relief may be in the alternative, but the relief must always be consistent with the case made by the bill."

And in *Lloyd* v. *Brewster et al.*, 4 Paige, 537, the same learned Chancellor says: "When a complainant is entitled to relief of some kind upon the general facts stated in his bill, if the nature of the relief depends upon the existence or non-existence of a particular fact or circumstance which is not within his knowledge, but which is known to the defendant, he may allege his ignorance as to such fact and call for a discovery thereof, and in such a case he may also frame his prayer in the alternative, so as to obtain the proper relief according as the fact may appear at the hearing of the cause."

In this case the plaintiff sets forth the facts upon which he relies for relief clearly and distinctly, and he is in no doubt in regard to the facts in his case, and has therefore framed his bill praying a discovery of some important fact of which he is ignorant. But he is in doubt as to the law arising upon and applicable to the facts of his case, and accordingly has framed his bill with the prayer in the disjunctive, in order that he may have either one or the other kind of relief prayed for, as the Chancellor may determine at the hearing.

The whole case was fully before the court, and we cannot see the necessity of the plaintiff's calling upon the defendant for the discovery of a fact of which he was ignorant, when no such ignorance existed, and presenting to the court literally the naked question of law as to the validity or invalidity of the mortgage, when that question was already before the court, and must necessarily be decided at the hearing.

In this case the prayer of the bill being in the alternative, if relief is granted at all, it must be consistent with the case made by the bill. By reference to the prayer of the bill, it will be found that in both its aspects it seeks to establish and quiet the plaintiff's title to the land. The first part of the prayer going on the assumption that the mortgage is void and of no binding force, and the second part, going on the assumption that the mortgage may be declared valid, in which event the prayer is that the defendant be required to render an account, etc., and resort first to the other lands described in the mortgage before touching the land claimed by the plaintiff.

Why should the defendant be required to foreclose the mortgage and resort to the lands embraced in it, other than the tract claimed by the plaintiff?

We suppose the prayer is based upon the allegations in the bill that those other lands are an ample security for the mortgage

debt, but that the interest and principal are increasing at a fearful rate, and that the payments made by Vaughan to Terry have been applied to the liquidation of the interest and penalty, while the principal is undiminished, and the security continually lessening in value.

Should the mortgage be foreclosed, the securities marshaled, and the mortgage satisfied out of the lands other than the tract claimed by the plaintiff, the plaintiff's junior legal title would be good against all the world, and stand upon as solid a foundation as it would were the mortgage cancelled and declared void.

If we are right in these conclusions, there can be no good objection to the prayer of the bill on account of inconsistency in the character of the relief prayed for, as it will be seen that the prayer, in both its branches, has but one purpose in view, that is, the protection and security of the plaintiff's title to the land.

The plaintiff's prayer to have the mortgage foreclosed and the securities marshaled is founded on his legal title to the land.

The averments in the bill show that the lands embraced in the mortgage, other than the tract claimed by the plaintiff, are ample to satisfy the debt intended to be secured by it, but that the exorbitant rate of interest said to be secured by the mortgage and constituting an incumbrance on the land, will, in a short time, increase the debt to such an amount that the plaintiff will be wholly unprotected in his rights.

Is the plaintiff, then, under the circumstances of the case, entitled to the aid of a court of equity to compel the defendant to foreclose his mortgage, and exhaust the other lands before resorting to the land claimed by the plaintiff?

This court, in the case of *Cornish* v. *Dews*, 18 Ark., 172, decided that "When there is more property included in a trust deed than is sufficient to satisfy all the debts secured by it, a pursuing creditor may file a bill against all the parties interested,

to have the trust closed, and the property first subjected to the payment of the trust debts, and the excess to the satisfaction of the complainant's debt.

If then the court will entertain a bill in behalf of a party who has no lien upon the property which he seeks to subject to the payment of his debt, cannot a junior incumbrancer, who has a legal title to the land, and whose rights are in danger of being sacrificed by the failure of the mortgagor to forclose, appeal to the court with even a greater show of reason and equity, to compel the defendant to exhaust all the other lands embraced in his mortgage before resorting to the land claimed by the plaintiff? See *Clark* v. *Carnall*, 18 Ark., 209 ; Story Eq. Ju., p. 611, and notes.

As to the objection to the bill on the ground of multifariousness, we may remark that under the former practice, a demurrer was the appropriate defense in such cases, but since the adoption tion of the Code, a different rule must prevail.

The court will now, on motion of the defendant, strike out of the complaint any cause or causes of action improperly joined with others, and if this is not done it will be regarded as a waiver of all objections to a misjoinder of causes of action. Civil Code, secs. 103 and 104. This must now be regarded as the correct practice.

In Kentucky it has been expressly so decided under a provision of her Code similar to ours. See Kentucky Civil Code, secs. 113, 114; *Hancock* v. *Johnson*, 1 Met., 242; Kentucky Code, p. 314.

The motion to elect was properly overruled.

After careful consideration, we are unable to find any error in the decree of the Chancellor. Let it, therefore, in all things, be affirmed.