## GILKERSON-SLOSS COMPANY *v.* FORBES.

Decided January 24, 1891.

*Homestead under act of Congress—Mortgage.*

> One who has become entitled to a patent, under the homestead act of Congress, may mortgage the land before the patent is issued.

APPEAL from *Franklin* Circuit Court.

HUGH F. THOMASON, Judge.

*Ed H. Mathes* for appellants.

BATTLE, J. This action was instituted by Gilkerson-Sloss Commission Company to foreclose a mortgage executed by E. Forbes and his wife upon land acquired by Forbes from the United States under the homestead act of Congress. It

was executed after Forbes entered the land and made the proof of residence and cultivation necessary to entitle him to a patent, and after he had received from the proper officer a final receipt, but before the issuance of the patent; and was given to secure a note executed at the same time. The court below held that this mortgage was void, and dismissed the action.

The judgment of the lower court was evidently based on section 4 of an act of Congress, entitled "An act to secure homesteads to actual settlers on the public domain," approved May 20, 1862, which provides: "No lands acquired under the provisions of this act shall in any event become liable to the satisfaction of any debt or debts contracted prior to the issuing of the patent therefor." Does it sustain the judgment of the court?

When a person does everything that is necessary to entitle him to a patent for a tract of public land, he becomes the equitable owner thereof. The land is segregated from the public domain, ceases to be the property of the goverment, and, in the absence of limitations and restrictions legally imposed, becomes subject to private ownership and all the incidents and liabilities thereof. *Simmons* v. *Wagner*, 101 U. S., 260; *Deffeback* v. *Hawke*, 115 U. S., 392; *Wirth* v. *Branson*, 98 U. S., 118; *Carroll* v. *Safford*, 3 How., 441; *Myers* v. *Croft*, 13 Wal., 291. Section 4 of the homestead act was certainly not intended for any such restriction or limitation. But it was intended for the protection of the settler, and as an inducement to him to settle upon, cultivate and improve the public land, by assuring him that he should not be disturbed, and his land taken from him by his creditors, by virtue of legal process founded on any debt contracted before his patent was issued. The language of the section is: "No lands acquired under the provisions of this act shall in any event become *liable*, etc. Shall become "liable," that is, subject to be taken without express or tacit stipulation under the rules of law or equity. It was not intended as a prohibition upon the right of the settler to

*Mortgage of homestead.*

alienate by deed or mortgage, after he becomes entitled to a patent.   It would illy comport with the spirit of the act to place such a restriction upon the power of the settler.   The tendency of it would be to defeat the object of the act by making the acquisition of land thereunder less desirable. For it is well known that patents do not issue in the usual course of business in the general land office until several years after the final receipt, or certificate of entry, is given ; and such a restriction would, for many years, deprive the settler of a source of credit which might, in many cases, be valuable.   In short, it would be an injury to the prudent and necessitous settler and serve no important purpose of public policy.

The limitation on the right to alienate, imposed by the homestead act, is confined to the period which expires when the settler becomes entitled to a patent.   In order to prevent him defeating the object of the act, he is required to make an affidavit, upon applying, and before he is permitted to enter, that his application to enter is made for his *exclusive* use and benefit, and that his entry is made for the purpose of actual settlement and cultivation, and not either *directly or indirectly*, for the use or benefit of any other person ; and, after the expiration of five years, to prove by two credible witnesses that he has resided upon or cultivated the land entered by him, for the term of five years immediately succeeding his entry, and make an affidavit that no part of the land has been alienated, except for church, cemetery, or school purposes, or for right of way for railroads.   After this there is no express limitation in the act upon the right of the settler to alienate.   This clearly indicates that the intention of the act is that he shall be free to dispose of the land as he wishes after he becomes entitled to a patent to the same.

Our conclusion is that a creditor cannot in any manner acquire an involuntary lien on land acquired by his debtor under the homestead laws of the United States to secure a debt contracted before the issuance of the patent, but that the owner of the land can mortgage it, after he becomes en-

titled to a patent, to secure such debts.   *Cheney* v. *White,* 5 Neb., 261; *Jones* v. *Yoakam, id.,* 265; *Nycum* v. *McAllister,* 33 Iowa, 374; *Newkirk* v. *Marshall,* 10 Pac. Rep., 571; *Webster* v. *Bowman,* 25 Fed. Rep., 889; *Lewis* v. *Wetherell,* 31 N. W. Rep., 356.

The judgment of the court below is reversed, and the cause is remanded with instructions to sustain the demurrer to the appellees' answer, and for other proceedings not inconsistent with this opinion.