MOORE *v.* TILLMAN.

Opinion delivered April 5, 1926.

1. HOMESTEAD—MORTGAGE NO ALIENATION.—A mortgage of land, entered for homestead purposes, by the entryman prior to obtaining his patent or making final proof entitling him to a patent, is not an alienation of the land, within the prohibition of Rev. Stat. U. S. § 2291.

2. HOMESTEAD—CONSTRUCTION BY LAND DEPARTMENT.—In controversies between individuals involving the construction of the Fed-

eral homestead law, the State courts, unless some insuperable obstacle of reason or policy intervenes, should harmonize their decisions with the interpretation of that law by the Land Department.

3. HOMESTEAD—VALIDITY OF MORTGAGE.—The provision in the Rev. Stat., § 2296, to the effect that no homestead "shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor," does not invalidate a mortgage voluntarily given on an unperfected entry.

Appeal from Faulkner Chancery Court; *W. E. Atkinson,* Chancellor; reversed.

*J. C. & Wm. J. Clark,* for appellant.

*R. W. Robins,* for appellee.

On January 4, 1918, A. M. Ledbetter sold the southeast quarter of section 27, in township 5 north, range 13 west, to J. E. Tillman, taking notes for $600 secured by mortgage on the land. Within a short time thereafter Tillman learned that the title to the southwest quarter of the southeast quarter was in the United States, and on January 25, 1918, he entered the above land under the homestead law and procured a patent in February, 1924. Mrs. A. E. Moore acquired the purchase money notes before maturity and without notice of any defects. On January 4, 1921, Tillman, being unable to pay the notes, executed four notes payable to Mrs. Moore for the sum of $165 each, secured by mortgage on the southwest quarter above mentioned, signed by his wife, Ida H. Tillman, and by A. W. Winston, due in one, two, three and four years. The notes being unpaid, Mrs. Moore brought suit on November 21, 1923, asking judgment upon the notes and foreclosure of the mortgage. Defendants answered, alleging that the mortgage was void as to the southwest quarter of the southeast quarter, for the reason that Tillman had not received a patent therefor or made final proof at the time he executed the mortgage. The chancellor gave judgment upon the notes, but sustained the defense as to the mortgage being invalid as to the southwest quarter of the southeast quarter. The plaintiff has appealed.

WOOD, J. The question presented by this appeal is whether or not one who has entered lands under the United States Homestead Act may execute a valid mortgage thereon prior to the issuance of a patent, or prior to making final proof entitling the entryman to a patent therefor. The applicable provisions of the homestead laws are contained in the Revised Statutes of the United States, as amended by acts March 3, 1891, c. 561, § 5, and June 6, 1912, c. 153, and are as follows:

"Section 2289. Every person who is the head of a family, or who has arrived at the age of twenty-one years. and is a citizen of the United States, or who has filed his declaration of intention to become such, as required by the naturalization laws, shall be entitled to enter one-quarter section, or less quantity, of unappropriated public lands, to be located in a body in conformity to the legal subdivisions of the public lands; but no person who is the proprietor of more than one hundred and sixty acres of land in any State or Territory shall acquire any right under the homestead law. And every person owning and residing on land may, under the provisions of this section, enter other land lying contiguous to his land, which shall not, with the land so already owned and occupied, exceed in the aggregate one hundred and sixty acres.

"Section 2290. Any person applying to enter land under the preceding section shall first make and subscribe before the proper officer and file in the proper land office an affidavit that he or she is the head of a family, or is over twenty-one years of age, and that such application is honestly and in good faith made for the purpose of actual settlement and cultivation and not for the benefit of any other person, persons or corporation, and that he or she will faithfully and honestly endeavor to comply with all the requirements of law as to settlement, residence and cultivation necessary to acquire title to the land applied for; that he or she is not acting as agent of any person, corporation, or syndicate in making such entry, nor in collusion with any person, corporation

or syndicate to give them the benefit of the land entered, or any part thereof, or the timber thereon; that he or she does not apply to enter the same for the purpose of speculation, but in good faith to obtain a home for himself, or herself, and that he or she has not directly or indirectly made, and will not make, any agreement or contract, in any way or manner, with any person or persons, corporation or syndicate whatsoever, by which the title which he or she might acquire from the Government of the United States should inure, in whole or in part, to the benefit of any person, except himself, or herself * * * .

"Section 2291. No certificate, however, shall be given, or patent issued therefor, until the expiration of five years from the date of such entry; and if, at the expiration of such time, or at any time within two years thereafter, the person making such entry; or, if he be dead, his widow; or, in case of her death, his heirs or devisee; or, in case of a widow in making such entry, her heirs or devisee, in case of her death, proves by two credible witnesses that he, she, or they have resided upon or cultivated the same for the term of five years immediately succeeding the time of filing the affidavit, *and makes affidavit that no part of such land has been alienated,* except as provided in section twenty-two hundred and eighty-eight, and that he, she, or they will bear true allegiance to the Government of the United States; then, in such case, he, she or they, if at that time citizens of the United States, shall be entitled to a patent, as in other cases provided by law.

"Section 2296. No lands acquired under the provisions of this chapter shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor."

Learned counsel for the appellees contend that a mortgage of the lands, entered for homestead purposes, by the entryman prior to obtaining his patent, or making final proof entitling him to a patent, is an alienation of the lands in the sense of the provisions of the homestead laws above, and is therefore forbidden by those laws.

The word "alienated" in § 2291, *supra*, is used in the narrow and restricted sense that the entryman has not executed a deed or absolute conveyance to the land or any part thereof upon which he made his homestead entry. A mortgage, or incumbrance, in itself does not operate in equity to convey an absolute title, and therefore by such instrument the entryman has not "alienated" his property in the sense of the above Federal statute. This is the interpretation put upon the word "alienated" by the Land Department of the United States, and bv the Supreme Court of the United States, and is practically the consensus of modern opinion in State jurisdictions where the above provisions of the statute have been under consideration. While the exact question here before the court was not decided by the Supreme Court of the United States in the case of *Hafemann* v. *Gross,* 199 U. S. 342, 50 Law ed. p. 220, nevertheless the similarity of the questions, and what was there said by the Supreme Court of the United States, show definitely the interpretation which that court has put upon the statutes under review. After referring to the provisions of the homestead law, Mr. Justice Brewer, speaking for a majority of the court, says: "With respect to a mortgage or deed of trust executed under like circumstances, the decisions of the Land Department have been all to the effect that such mortgage or deed of trust is not an alienation within the scope of the homestead statute or forbidden by the preemption law. * * * Obviously, the trend of authorities is strongly in favor of the proposition that a mortgage or deed of trust by one seeking an entry under the preemption or *homestead laws* of the United States, made prior to the perfection of his equitable right, is valid." In this opinion Judge Brewer cites many decisions of State courts as a basis for the statement above quoted. While the interpretation of the above provisions of the Revised Statutes of the United States by the Land Department is not controlling on the courts, it is at least highly persuasive; and where it is in harmony with the decision of the United States Supreme

Court in the construction of these statutes, it occurs to us that such interpretation should and must govern.

Mr. Finney, First Assistant Secretary of the Interior, in 48 Land Decisions, at page 583, says: "All the decisions of the department since the incumbency of Secretary Teller have been to the effect that such mortgage or deed of trust is not an alienation within the scope of the homestead statute, or forbidden by the spirit of the law. * * * The spirit and intent of the preemption and homestead laws in this respect are the same." This interpretation is in precise conformity with what is said by the Supreme Court of the United States, through Mr. Justice Brewer, in *Hafemann* v. *Gross, supra.*

Learned counsel for the appellees, to sustain their contention that the mortgage of the lands entered for a homestead is an alienation thereof, and therefore prohibited by the Revised Statutes of the United States cite the line of our cases holding that a mortgage carries the legal title. *Whittington* v. *Flint*, 43 Ark. 504; *Terry* v. *Rosell*, 32 Ark. 478; *Reynolds* v. *Canal Co.*, 30 Ark. 520; *Kannady* v. *McCarron*, 18 Ark. 166; *Gilchrist* v. *Patterson*, 18 Ark. 575.

But an analysis of these very cases will discover that a mortgage of lands is not a conveyance thereof carrying the absolute and unrestricted title thereto. On the contrary, while a mortgage at law does carry the legal title, it is not, either at law or in equity, an absolute, unconditional and indefeasible title. It becomes such only after the mortgagor has breached the condition of the mortgage and his equity of redemption has been foreclosed. In other words, while the legal title under the law does vest in the mortgagee, still this is only for the purpose of enabling him to obtain security for the satisfaction of the debt or obligation due him by the mortgagor; and, when that satisfaction is obtained, the legal title vests and remains in the mortgagor without the necessity of a reconveyance from the mortgagee. Thus, after all is said and done, a mortgage, in common parlance as well as legal acceptation, is an instrument evi-

dencing a security for debt—the conveyance or instru-
ment to be void upon the discharge of the debt or obliga-
tion. As is well said in 19 R. C. L., page 242, § 2, "har-
mony and consistency have been achieved only by the
complete adoption, by judicial decision or statute, of the
original equitable conception that a mortgage is in fact
a security—nothing more, nothing less." See also Hil-
lard on Mortgages, § 2, p. 1; 4 Kent's Commentaries,
*pgs. 154 to 162, inclusive. Our own court, through
Chief Justice COCKRILL, in *Stewart* v. *Scott*, 54 Ark. 187-
191, gives a clear definition of the essentials and char-
acteristics of a mortgage. Among other things he says:
"A power to sell is not necessarily a power to mortgage,
nor is a power to mortgage a power to sell, and it is held
that giving a mortgage upon land by one who has already
conveyed his title by deed is not disposing of the land,
within the meaning of a statute which made it a felony
to make a fraudulent second sale. Payment of the debt
at its maturity destroys the estate, without a reconvey-
ance or release by the mortgagee. Equity always
regards the mortgagor as the owner of the land, and the
mortgagee as holding a security only for his debt; and a
court of law, in a controversy between the mortgagor
and a stranger to the mortgage, does not regard the mort-
gage as a conveyance. For example, in a suit by the
mortgagor for possession, it is no answer for a stranger
to say that the title is in another by virtue of the mort-
gage. 'It is an affront to common sense,' said Lord
Mansfield in *Rex* v. *St. Michaels,* 2 Doug. 632, 'to say the
mortgagor is not the real owner.' " And as early as
*Kannady* v. *McCarron, supra,* Mr. Chief Justice ENGLISH,
speaking for the court, said: "In equity, a mortgage is
regarded as a security for the debt, etc., and the mort-
gagor is considered the owner of the property until he
is debarred by his own default, or by judicial decree;
but, at law, the legal title passes to the mortgagee, sub-
ject to be defeated by the performance of the conditions
of the mortgage." See also *Hannah* v. *Carrington,* 18

Ark. 85-105; *Burr* v. *Robinson,* 25 Ark. 275-281; *Ringo* v. *Woodruff,* 43 Ark. 469-488.

In *Cox* v. *Donnelly,* 34 Ark. 762, we held that an agreement by a homestead entryman before the completion of his entry for the sale and conveyance of a part of the land entered as a homestead, is in violation of the above statute. But, as we have seen, an agreement for a sale or absolute conveyance of the land is an alienation; a mortgage is not. In *Shorman* v. *Eakin,* 47 Ark. 352, one Fleming Burke was in possession of a tract of land which he sold to Eakin on a credit. Eakin executed his note to Burke for the purchase money, and Burke executed a bond for title to Eakin agreeing to convey to him the land when the note was paid, and Eakin went into possession under this agreement. Eakin, finding that the land was subject to homestead entry, entered as such and remained in possession. Burke sold Eakin's note to one Shorman, and Eakin, having refused to pay the note, Shorman instituted an action against him on the note and to foreclose a vendor's lien on the land. This court held that Shorman had no lien on the land, and that the note was without consideration, and that Shorman's cause of action failed. Judge BATTLE, in the opinion, cites *Cox* v. *Donnelly, supra,* in which we held that an agreement by a homestead entrant for the sale of land entered is void, and also *Sorrels* v. *Self,* 43 Ark. 451, in which we held that lands entered as a homestead are not subject to be taken for debts contracted by the entrant while the title to the same is in the government. After citing these two cases, Judge BATTLE stated as follows: "As a logical sequence to these decisions, it necessarily follows, no lien on the land entered under the homestead to secure a debt contracted before the patent therefor is issued can in any manner be acquired." And further: "No title therefore, acquired by Eakin under the homestead act, inured to the benefit of Burke or Shorman, as that would defeat the spirit and intent of the act, and be contrary to public policy; and for the same reason they, or either of them, did not acquire any lien on

account of Eakin's purchase from Burke." And further: "Since Burke never had any title to the land sold to Eakin, and the title acquired by Eakin did not inure to him, the note sued on was without consideration."

It is clear that it was unnecessary to the conclusion reached by the court in the decision of the above case to hold that "no lien on the land entered under the homestead to secure a debt contracted before the patent therefor is issued, can in manner be acquired." True, the language was germane to the discussion, but was not necessary to the decision, and the facts are entirely different from the case at bar, and therefore we do not feel bound by the decision to hold, in the instant case, that a mortgage executed by the homestead claimant prior to the time of receiving his patent or making his final proof is null and void. In the case of *Shorman* v. *Eakin, supra,* Burke, although in possession of the land at the time he sold to Eakin, was not claiming the land under a homestead entry but under a swamp land grant. Furthermore, Burke, even if he could be considered as the homestead claimant, was not proposing to mortgage the land but to make a straightout unconditional sale of the same. There was no mortgage executed by Eakin, the homestead claimant, to Burke. So, from any viewpoint, there was a total failure of consideration for the note on which Shorman predicated his action. The case, for all purposes of the decision, could and should have ended there.

In the case of *Gilkerson-Sloss Co.* v. *Forbes,* 54 Ark. 148, Forbes entered the land as a homestead and had made final proof necessary to entitle him to a patent. Before he obtained his patent, he and his wife executed a mortgage on the land entered. Under those facts we held that one who has become entitled to a patent under the homestead act of Congress may mortgage the land before the patent is issued. Judge BATTLE, speaking for the court, said: "Our conclusion is that a creditor cannot, in any manner, acquire an involuntary lien on land acquired by his debtor under the homestead laws of the United States, to secure a debt contracted before the

issuance of the patent, but that the owner of the land can mortgage it, after he becomes entitled to a patent, to secure such debts.'' It will be observed that in neither of the above cases was the precise question now before us involved or decided, for the facts did not call for such decision. Therefore, any language in *Shorman* v. *Eakin* and in *Gilkerson-Sloss Co.* v. *Forbes, supra,* which may be construed by implication as holding that a homestead entryman cannot mortgage the lands entered prior to making his final proof or obtaining his patent therefor, is necessarily *obiter dictum.* If the question had been before the court in those cases that is now before us, we frankly concede that the learned judge, who voiced the opinions of the court, used some language which clearly indicates that the court, at the time these decisions were handed down, was of the opinion that a mortgage could not be executed by the homestead claimant prior to the time of making his final proof or obtaining his patent. It was doubtless the opinion of the great judges who then constituted the court that a mortgage was at least a conditional alienation of the lands, and it may be that the weight of authority, State and Federal, at that time, sustained that view. Such was the doctrine in Minnesota, *Webster* v. *Bowman,* 25 Fed. 889; *McHugh* v. *Smith,* 9 Minn. 259—the case cited by Judge BATTLE in *Shorman* v. *Eakin, supra*—to sustain the *obiter.* Such was the doctrine in Kansas. *Brewster* v. *Madden,* 15 Kan. 249; *Mellison* v. *Allen,* 30 Kan. 382. But *McHugh* v. *Smith, supra,* was overruled by the same court in *Jones* v. *Tainter,* 15 Minn. 512; *Lang* v. *Morey,* 40 Minn. 396; and *Brewster* v. *Madden, supra,* was overruled in *Stark* v. *Morgan*—(Kan.) 6 L. R. A. (N. S.) 934; and some other State cases which adopted the earlier rule that a mortgage was an alienation were later repudiated by the same court. These cases are referred to by Judge Brewer in *Hafemann* v. *Gross, supra,* and numerous cases of State courts are cited adopting the view that a mortgage is not an alienation in the sense of the homestead law, *supra,* which doubtless led the United States

Supreme Court to make the statement above quoted that the trend of authorities is strongly in favor of the doctrine that a mortgage, prior to the final proof or obtaining the patent, is valid.

Nevertheless, our court has never decided the precise question here involved, and therefore no rule of property has been established by this court by any decision upon the subject. We are called upon now to decide it, and must decide it, in the light of the weight of authority that now obtains throughout the American Union, and what we believe to be the better reason.

One of the best cases we have found upon the subject is that of *Stark* v. *Morgan, supra,* 85 Pac. (Kan.) 567, 6 L. R. A. (N. S.) 934. After an exhaustive review of the authorities, the Supreme Court of Kansas says: "However, the courts as well as the Interior Department have recognized no distinction between mortgages executed upon land held under the preemption law, when that law was in force, and those held under the homestead law. The purpose of the requirements in both is held to be to prevent speculative entries, and the right of the claimant to execute a valid mortgage upon the land for any legitimate purpose is no longer doubted. There is much force in the suggestion that, in cases of this kind, the court should hold in harmony with the policy and will of the government as announced in the rulings of the Land Department." See also case note.

Another illuminating case is that of *Lohman State Bank* v. *Grim,* 222 Pac. 1052, where the Supreme Court of Montana says: "The act of the entryman in giving a mortgage in good faith to secure a legitimate debt is not deemed an alienation within the meaning of, and is not forbidden by, the spirit of the Federal statute which provides that land acquired under the homestead laws shall not, in any event, become liable to the satisfaction of any debt contracted prior to the issuing of patent therefor. This view is sustained by the nearly unanimous voice of the courts." After citing numerous cases, the court continues: "Yet, while the entryman may

incumber the land voluntarily to the extent of his rights therein, within the limitations above mentioned, the statute prevents a creditor from in any manner acquiring an involuntary lien upon the land to secure satisfaction of a debt contracted by the homesteader before patent issues.''

Counsel for the respective parties, in their most excellent briefs, have greatly lightened our task by an exhaustive survey of all the authorities of importance to be found on the subject. After a critical analysis of these, we are convinced that a homestead entryman may mortgage the land entered either before or after making final proof entitling him to a patent therefor. The *rationale* of the doctrine of the cases is: First, that these homestead provisions of the Revised Statutes were intended by Congress for the benefit of actual *bona fide* citizens of the United States who wish to acquire homesteads. Alienation is prohibited because it would mean abandonment and would lead to speculation and fraud upon the government and be destructive of the very purpose which Congress had in mind in enacting the homestead laws. Therefore, the homesteader is forbidden to alienate the entered land, and the same can not be taken from him by process created, not by contract, but by operation of law. See *Ruddy* v. *Rosser*, 248 U. S. 104. But, while laying over the settler this protecting shield, Congress did not intend it should be used as a destruction of his right to voluntarily pledge the land as a security for his debts or obligation, because such restrictions placed on the settler might hinder rather than help him in the acquisition of his homestead, and thus defeat the main purpose of the law. See *Klemp* v. *Northrop,* 137 Cal. 414, 70 Pac. 284; *Fuller & Co.* v. *Hunt,* 48 Iowa 163, and other cases cited in note to *Stark* v. *Morgan,* 9 A. & E. Cases, 930-935.

Second: Since the homestead entrant, by mortgaging the land entered as security for his debts or obligations, does not contravene the policy of the government, as between him and the mortgagee, he would be estopped from disputing the validity of a lien created by him.

*Kirkaldie* v. *Larrabee,* 31 Cal. 455; *Stark* v. *Duvall,* 7 Okla. 213; *Weaver* v. *Laidler,* 26 Wash. 144; *Klemp* v. *Northrop, supra.*

Third: In controversies between individuals involving the construction of the homestead laws to determine their rights, for the sake of uniformity and harmony in the practical administration and execution of the government's home-building program, State courts, unless some insuperable obstacle of reason or policy intervenes, should endeavor to harmonize their decisions with the interpretation of the homestead laws by the Land Department, which is intrusted with the enforcement of these laws. Most assuredly should this be the case so long as the interpretation by the Land Department is not contrary to the decisions of the Supreme Court of the United States. This rule is observed with practical unanimity as shown by numerous decisions of State courts cited in appellant's brief.

Fourth: The Land Department, in an exhaustive opinion by First Assistant Secretary Finney, 48 Land Dec. 582, to which we have already referred, distinctly holds that "a homestead entryman is not precluded from mortgaging his entry prior to the perfection of his equitable title; and the provision contained in the Revised Statutes to the effect that no homestead shall in any event become liable to the satisfaction of any debt contracted prior to the issuance of patent, does not invalidate a mortgage voluntarily given on an unperfected entry."

It follows that the trial court erred in refusing to foreclose appellant's mortgage on the southwest quarter of the southeast quarter of section 27, township 5 north, range 13 west, Faulkner County, Arkansas, said lands being embraced in a mortgage executed by appellee, J. E. Tillman, to the appellant to secure the debt of appellee to appellant. The decree is therefore reversed, and the cause will be remanded for further proceedings according to law and not inconsistent with this opinion.