CHARLES H. LINVILLE, Garnishee of the Nat-
chaug Silk Company vs. HADDEN & CO.

*Receivers—Effect of Appointment—Attachment in this State
of Property of Foreign Corporation in the Hands of a
Receiver—Estoppel.*

After the appointment of a receiver for a foreign corporation,
none of its officers have power to transfer its assets in this
State or to ratify a transfer previously made.

Creditors of a foreign corporation for which a receiver has been
appointed may proceed by attachment in this State to enforce
their claims against the assets of the corporation, whether such
creditors be citizens of this State or of any State other than
that in which the receiver was appointed.

A receiver was appointed for a foreign insolvent corporation
in the State of its domicil, and a creditor sued out an attach-
ment in this State against assets of the corporation situated
here. Subsequently, the creditor filed his claim with the
foreign receiver, expressly reserving his right to proceed
with the attachment in this State. *Held*, that under these
circumstances the creditor was not estopped from proceed-
ing with the attachment suit because he had filed his claim
with the receiver.

Appeal from a judgment of the Superior Court of
Baltimore City (Ritchie, J.).

The cause was argued before McSherry, C. J.,
Bryan, Fowler, Briscoe, Page, Roberts and Boyd,
JJ.

*William Reynolds* (with whom was *Paul M. Burnett* on
the brief), for the appellant.

*Henry B. Twombly* and *Edward Duffy* for the appel-
lees.

FOWLER, J., delivered the opinion of the Court.

The plaintiffs, Hadden & Co., a New York firm, were creditors of the Natchaug Silk Company. The latter became insolvent and James E. Hayden was appointed its receiver by a decree of the Superior Court of Windham County, Connecticut, on the 26th of April, 1895. On the 27th of December of the same year the plaintiffs caused to be issued from the Superior Court of Baltimore City a foreign attactment against the Silk Co., and it was laid in the hands of the appellant, Charles H. Linville, as garnishee. We held in the former appeal, *Hadden & Co.* v. *Linville, Garnishee,* 86 Md. 210, growing out of this same attachment proceeding, that the transfer from the Silk Co. to the First National Bank of Willimantic, Connecticut, also a creditor of the Silk Co., was invalid, because it was made without the authority of the board of directors. We also held in the former case that the transfer we have just mentioned which was relied on to defeat the attachment, being invalid, the plaintiffs were entitled to maintain their attachment, and the judgment in favor of the garnishee was reversed and the case was remanded for a new trial. The first step which appears to have been taken in the Court below after the case was remanded was a motion to quash the attachment, filed by James E. Hayden, receiver of the Silk Co., on the ground that the plaintiffs had voluntarily made themselves parties to the suit in the Connecticut Court by filing their claim there against the Silk Company, and that they were therefore estopped from proceeding in the Maryland Courts. But the Court below overruled this motion, and the receiver has failed to appeal. However, the same question is presented by the fifth and sixth exceptions of the garnishee, and we will consider it when we discuss them. The judgment below was for the plaintiffs against the garnishee, and the latter has appealed.

The first exception of the garnishee was to the refusal by the Court to allow him to prove that Mr. Chaffee, the president and general manager of the Silk Company, had directed the secretary and treasurer of the

Silk Company to transfer to another creditor several thousand dollars worth of goods in payment of a debt, and that the goods were in fact shipped, and that Mr. Chaffee's action in this matter was never questioned thereafter by any member of the board of directors, although it came to their knowledge very soon.

It appears very clear in view of the conceded facts that the ruling complained of was correct. The transfer to the New York creditors was made on the 22nd of April, but it was not until the 29th of that month that Chaffee informed his board what he had done, saying that he had transferred all the goods of the Silk Company in New York, Chicago and Baltimore to the bank. But the board refused to ratify Mr. Chaffee's action, upon the ground that the decree of the Connecticut Court of the 26th of April appointing a receiver for the Silk Company deprived them of all power to act. The transfer in Baltimore to the garnishee was not made until the afternoon of the 26th of April and therefore after the receiver had been appointed and had taken possession of the Silk Company's affairs. Therefore, even if the board of directors had attempted after the appointment of the receiver to ratify the act of Mr. Chaffee in transferring the property of the Silk Company to the garnishee or to any other creditor, their action would have been futile. For it is text-book law " that the appointment of a receiver over a corporation is generally equivalent to a suspension of its corporate functions, and of all authority over its property and effects, and is also equivalent to an injunction restraining its agents and officers from intermeddling with its property." *High on Receivers*, sec. 290. This must necessarily be so— otherwise both the receiver and the board of directors would be competent to exercise the rights, privileges and franchises of the corporation and endless confusion would be the result. If, therefore, we are correct in the conclusion reached in the former case that the transfer by Chaffee of the Silk Company's property in Baltimore was invalid, it follows that the evidence offered to show that the directors of that company acquiesced

in it or ratified it after they ceased to have any power to act, as well as all the evidence which was offered for the purpose of showing that the transfer was made to continue the Silk Company as " a going concern "—was clearly inadmissible. The invalidity of the transfer being established, all evidence tending to prove the good faith of Chaffee in making it, or the valuable consideration which the bank offered for it, was wholly immaterial and irrelevant. We need say nothing further to show that in our opinion the rulings of the Court below which form the first four exceptions are free from error.

But it was urged that the plaintiffs being non-residents have no standing in our Courts, and that they will not be allowed to set up a claim again the title of the Connecticut receiver. The decree appointing the receiver in Connecticut had no extra-territorial force, and therefore, although while a citizen of that State might not be allowed to set up a claim either there or here which ignored the validity of that decree; yet citizens of this State, or of other States than Connecticut are not bound by it, outside of the last named State, and, in spite of the Connecticut decree, either our own citizens or the citizens of third States may proceed here to collect their debts. The general principle is thus expressed in *Beach on Receivers* (Old Ed.), sec. 268, and supported by the citation of many authorities: " Because of the principle of ' judicial comity,' a phrase of well defined and accepted meaning, a receiver of one State or jurisdiction will be recognized and permitted by the Courts of another to do all that is necessary to take and possess the property of the debtor there located, provided that to do so will not violate any law or policy of the latter, or embarrass or do injustice to any of its citizens, or those of a *third State* who have come there to enforce the payment of their claims against the debtor." It cannot be doubted that if the plaintiffs were citizens of Maryland the inchoate lien and rights secured by the attachment would not be set aside in favor of a foreign receiver. *Bartlett* v. *Wilbur*, 53 Md. 485; *Ins. Co.* v. *Langley*, 62 Md. 196; *Day* v. *Telegraph Co.*, 66 Md. 354. And

the fact that the plaintiffs in this case happen to be citizens of New York does not lessen their rights as suitors in the Courts of this State. In the case of *Mason* v. *Union Mills Co.*, 81 Md. 446, which was also an attachment case, we held that the plaintiffs, who were citizens of Rhode Island, were equally entitled with the citizens of this State to the aid of our Courts in enforcing their claims by way of attachment against a foreign creditor. See also *Southern Building and Loan Association* v. *Price*, *ante* p. 155. And so it has been held almost universally. Nor does it appear to us that the fact that the foreign debtor has become insolvent and that a receiver has been appointed in the State where he resides to take possession of his property there alters or diminishes the rights of Maryland creditors, or of foreign creditors suing here, if they do not reside in the same State in which the receiver is appointed; because, as we have already said, the authority of the receiver has no force outside of the State where he is appointed.

It was suggested that we have held in the case of *Castleman* v. *Templeman*, 87 Md. 546, that the claims of a foreign receiver to the personal property of his corporation located in this State will be given precedence to those of *all* non-resident creditors. But the opinion of the Court in that case, delivered by BOYD, J., does not go to that extent. The question there was whether the appellant, after obtaining a decree in the Virginia Court appointing a receiver of an insolvent corporation with power to sue for and collect unpaid subscriptions either in Virginia or in other States, could herself sue in Maryland to recover such subscriptions from Maryland stockholders, and it was held that the plaintiff's right to sue was merged in the Virginia decree under which the receiver was appointed and which was passed on a bill filed by her, and that the Virginia receiver and not the plaintiff should bring the suit in Maryland. The general principle that the functions and powers of a receiver for the purposes of litigation are limited to the Courts of the State within which he has been appointed is recognized in the case just cited. And it is also said

that the tendency is to recognize the claims of foreign receivers when it can be done without injustice to our own citizens and laws. But, as we have already seen, the citizens of third States have an equal claim upon us for the protection of our laws in this respect.

The only remaining question is that presented by the fifth and sixth exceptions, namely, what is the effect, *under the facts of this case*, of the filing by the plaintiffs of their claim against the Silk Company with the receiver of that company in Connecticut?

It seems to us that this question is a very simple one. Whatever doubt there may be, if any, in regard to the general question, which was much discussed, all difficulty disappears, we think, when we recall the fact that this attachment suit was instituted in Maryland long before the claim was filed with the receiver in Connecticut; and that when filed it was accompanied with an express reservation or condition that the plaintiffs by filing it did not intend to abandon any rights that they had gained by reason of this attachment suit. But assuming that we could, with any show of reason, hold that the act of the plaintiffs now relied on as a waiver or an estoppel has that effect in spite of their express declaration that they did not intend it to have any such effect, and notwithstanding the receiver, in whose behalf this defence is now set up, by his silence at least acquiesced for a long time in the position taken by the plaintiffs, yet we think that the authorities cited to sustain the view of the garnishee are very far from doing so. It is, of course, well settled that when a foreign creditor comes into the *same* State in which insolvent proceedings are pending and files his claim *there* and thus accepts the benefit of such proceedings, he makes himself a party, and he will be accorded the same and no greater rights than resident creditors. *Jones* v. *Horsey*, 4 Md. 306; *Brown* v. *Smart*, 69 Md. 327. But we have no such question here, there being no insolvent proceedings either here or in Connecticut. In *Loney* v. *Bayley*, *&c.*, 45 Md. 450; *Horsey* v. *Chew*, 65 Md. 557, it was held, " that a creditor who participates in proceedings in

equity for the distribution of property sold *under a deed of trust* makes himself a party to *the deed*," and will not be allowed to deny its validity and will be held to have waived any lien or claim he may have against the property and will be required to look alone to the proceeds of sale. But it will be observed that in the two cases last cited all the proceedings were had in this State, and that the property involved was also here. Of course if we should allow creditors here to proceed simultaneously in our Courts both at law and in equity against the same property, great confusion and injustice would result. But the situation is very different in the case now before us, for there is but one proceeding here, the attachment, and the other proceeding to which it is contended the plaintiffs have become parties was had in Connecticut. It is or must be conceded, under the decisions of this Court, that the Connecticut proceedings and the decree therein have no force here, except perhaps to enable the receiver who was thereby appointed to ask permission in certain cases to sue in the Maryland Courts. But, irrespective of authority, we think, under the facts of this case, the filing of the claim by the plaintiff in the Connecticut proceeding can have no such effect as that imputed to it by the garnishee.

It follows, therefore, that in refusing to allow the garnishee to offer in evidence the claim as filed with the receiver, which constitutes the fifth exception, and in rejecting his prayer based upon the theory that the filing of such claim prevented a recovery in this case, which forms the sixth exception, no error was committed.

> *Judgment affirmed with costs, except costs of printing documents pages 16, 27 and 32.*