## HAFEMANN v. GROSS.

ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 64.　Argued November 9, 1905.—Decided November 27, 1905.

A preëmptor made an agreement with a party advancing money to pay one-fourth of the expenses of making final proof to repay such party a certain portion of the proceeds of sale provided that after obtaining title he could find a purchaser and sell the land at its proper value.

*Held* that there was no mortgage, deed of trust, or agreement for specific lien, but that the agreement was only a promise to pay in case of sale and could not be enforced against the land, and that it therefore was not void under § 2262, Rev. Stat.

By the admissions in the pleadings in this case, on December 1, 1890, the defendants in error, together with one Edmund F. Gross, as parties of the first part, entered into a contract with the plaintiff in error, which stipulated: "That for and in consideration of the covenants hereinafter mentioned, the parties of the first part agree to pay one-fourth of all expenses accruing to the party of the second part in making final proof to S.W. ¼ of the N.W. ¼, the N. ½, of the S.W. ¼, and the S.W. ¼ of the S.W. ¼ of sec. 14, all in township 58, north of range 19 west, in St. Louis County, Minn., and receiving title thereto, and the party of the second part agrees and binds himself to pay to the parties of the first part one hundred dollars in cash upon the delivery of these presents for locating him on said land, and he further agrees to give the parties of the first part one-fourth part of the price and proceeds that may hereafter be obtained for the sale of said land after he has obtained title thereto from the United States, deducting the one-fourth expense as above provided, and can find a purchaser for and sell the same at its proper value."

The parties of the first part fully complied with all the stipulations of this contract. The plaintiff in error, who at the

time of the contract was proceeding under the preëmption law, made his final proofs, and on December 19, 1891, received a patent. On October 18, 1895, he sold the pine timber on the land and paid to the parties of the first part one-fourth of the amount received by him therefor. Edmund F. Gross subsequently assigned to Albert F. Gross, one of the defendants in error, all of his right, title and interest in the contract. On July 17, 1902, the plaintiff in error sold and conveyed the land to the Onondaga Iron Company. This action was brought in the District Court of the county of St. Louis, Minnesota, to recover one-fourth part of the moneys received by him on said sale. Judgment was entered in the District Court in favor of the plaintiffs, 91 Minnesota, 1; 92 Minnesota, 367, which was affirmed by the Supreme Court of Minnesota, and thereupon this writ of error was sued out.

*Mr. Roger S. Powell* for plaintiff in error.

*Mr. Thomas J. Davis* and *Mr. John E. Davies* for defendants in error.

Mr. Justice Brewer, after making the foregoing statement, delivered the opinion of the court.

The case turns upon the construction of the contract and its alleged conflict with section 2262, Rev. Stat., the pertinent part of which is:

"Before any person claiming the benefit of this chapter is allowed to enter lands, he shall make oath before the receiver or register of the land district in which the land is situated. . . . That he has not settled upon and improved such land to sell the same on speculation, but in good faith to appropriate it to his own exclusive use; and that he has not, directly or indirectly, made any agreement or contract, in any way or manner, with any person whatsoever, by which the title which

he might acquire from the Government of the United States should inure in whole or in part to the benefit of any person except himself."

The defendants in error insist that the title was to be in no manner affected by the contract; that it was simply a promise on the part of the preëmptor to pay a certain sum of money, the amount thereof to be determined by the proceeds of a sale which he might subsequently make; that he was under no obligations to make any sale, and if he did not they would have no claim upon him. On the other hand, the plaintiff in error invokes the doctrine laid down in *Anderson* v. *Carkins*, 135 U. S. 483, that by the terms of the contract the title which he acquired from the Government was in part to inure, indirectly at least, to the other parties to the contract. He insists that the purpose of Congress was to secure to the preëmptor the full benefit of the property patented to him; that this purpose is emphasized by the use of the words "directly or indirectly," and that any contract by which third parties were to acquire a portion of the property or a share in the proceeds of any sale of the property was really a contract which operated indirectly to transfer the title in part to such third party. Under such construction a contract by which the preëmptor should agree to mortgage the land after acquiring title would be void, because on failure to pay and by foreclosure of the mortgage the mortgagee might acquire title.

The question is not free from doubt. The contract did not directly affect the title; that was to be absolutely vested in the patentee, undisturbed by any claim of the defendants in error. He was not bound to do anything by which any portion of the title should pass to them, directly or indirectly. On the other hand, its effect was to cast a limitation on the full benefit of the property, for while the patentee was under no obligation to sell, he was required to divide the proceeds if and when he made a sale.

It may be well to examine the decisions of the courts, Federal as well as State, and also the rulings of the Land Department.

Before doing so, however, we quote the corresponding provisions of the Federal statutes respecting homesteads. Secs. 2290 2291 and 2296, Rev. Stat. In his application for a homestead entry the applicant must make affidavit that his "application is made for his exclusive use and benefit, and that his entry is made for the purpose of actual settlement and cultivation, and not either directly or indirectly for the use or benefit of any other person." And before a certificate or patent is issued he must make affidavit "that no part of such land has been alienated, except as provided in section 2288." That section refers to the transfer for church, cemetery or school purposes, or for the right of way of railroads. The land shall not "in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor."

Under these provisions it has been held that a contract to convey the whole or part of the land made prior to the perfection of his equitable right by one seeking preëmption or a homestead is void, and will not be enforced in the courts, *Anderson* v. *Carkins, supra;* and, if known to the Department, will prevent the passing of the legal title. Such has been the uniform ruling of the Land Department, as well as of the courts, state and Federal.

With respect to a mortgage or deed of trust executed under like circumstances, the decisions of the Land Department have been all to the effect that such mortgage or deed of trust is not an alienation within the scope of the homestead statute or forbidden by the preëmption law, especially where, in the case of a preëmption, the mortgage is given to secure money borrowed to complete the purchase of the land. See, in reference to preemptors, *Larson* v. *Weisbecker*, 1 L. D. 422, Opinion of Secretary-Teller; *In re William H. Ray*, 6 L. D. 340, Opinion of Acting Secretary Muldrow; *Haling* v. *Eddy*, 9 L. D. 337, Opinion of Secretary Noble; *Murdock* v. *Ferguson*, 13 L. D. 198, Opinion of Assistant Secretary Chandler. With reference to a homestead entryman, see *Mudgett* v. *Dubuque & Sioux City R. R. Co.*, 8 L. D. 243, Opinion of Secretary Vilas; *Dawson* v.

*Higgins,* 22 L. D. 544, Opinion of Secretary Smith; *Kezar* v. *Horde,* 27 L. D. 148, Opinion of Secretary Bliss. In addition, see *Lawson* v. *Reynolds,* 28 L. D. 155, in which Secretary Hitchcock held that a "written agreement executed by a homesteader and operating as a mere lease of part of the premises and the grant of an easement, the use of which would tend to improve and increase the value of the land as a homestead, is not an alienation of any part of such land, and no bar to the perfection of the entry." See also *Kingston* v. *Eckman,* 22 L. D. 234, in respect to an entry under the timber and stone act of June 3, 1878, 20 Stat. 89, as amended by the act of August 4, 1892, 27 Stat. 348, the provisions of which statute in reference to the oath of the applicant are similar to those in the preëmption act.

There has been some division in the courts upon the question. In *Brewster* v. *Madden,* 15 Kansas, 249, the Supreme Court of that State, in an opinion delivered by the writer of this, held that a mortgage given by a preëmptor prior to the entry of the lands was void, reaching this conclusion largely on the proposition that at the time the preëmption act was passed (1841) mortgages always in form conveyances were then regarded by the profession generally as conditional alienations. To like effect were the early rulings of the Supreme Court of Minnesota, *McCue* v. *Smith,* 9 Minnesota, 252; *Woodbury* v. *Dorman,* 15 Minnesota, 338, though these rulings were subsequently distinctly overruled by the same court. *Jones* v. *Tainter,* 15 Minnesota, 512; *Lang* v. *Morey,* 40 Minnesota, 396. *Bass* v. *Buker,* 6 Montana, 442, deciding the same way, was also overruled in *Norris* v. *Heald,* 12 Montana, 282. The large majority of state decisions follow these later rulings. See, in case of preëmptions, *Wilcox* v. *John,* 21 Colorado, 367; *Christy* v. *Dana,* 34 California, 548; *Christy* v. *Dana,* 42 California, 174; *Camp* v. *Grider,* 62 California, 20; and in reference to homesteads, *Fuller* v. *Hunt,* 48 Iowa, 163; *Dickerson* v. *Bridges,* 147 Missouri, 235; *Weber* v. *Laidler,* 26 Washington, 144; *Spiess* v. *Neuberg,* 71 Wisconsin, 279; *Kirkaldie* v. *Larra-*

*bee,* 31 California, 456; *Orr* v. *Stewart,* 67 California, 275; *Stark* v. *Duvall,* 7 Oklahoma, 213. In *Orrell* v. *Bay Manufacturing Company,* 83 Mississippi, 800, the court held that the prohibition of the alienation of public land by parties who have taken the preliminary steps to acquire the same under the homestead laws, and who have not perfected their entries, has reference to an absolute sale of the land, or some part of it, and in that case the leasing of trees on the land for turpentine purposes and the sale of trees was held not an alienation within the meaning of the statute.

Obviously, the trend of the authorities is strongly in favor of the proposition that a mortgage or deed of trust by one seeking an entry under the preëmption or homestead laws of the United States, made prior to the perfection of his equitable right, is valid. These authorities would fully sustain the decision of the Supreme Court of Minnesota in the present case.

Further, in the case at bar, there was no mortgage, deed of trust or agreement for a specific lien of any kind. It was simply a promise to pay money in case of a sale by the patentee, the amount of the payment to be determined by the sum received on the sale. It was a promise which in no event could be enforced against the land. It was only a personal obligation of the patentee. It might never be enforced against him, and could not be except upon his sale of the land. Of course, it would not be contended that a mere promise to pay money by one seeking to acquire title under a homestead was not binding, and if the only effect of the contract is to measure the sum which the patentee agrees to pay by that which he may receive when he sells the land, it cannot be held that a contract has been made for an alienation of the title in whole or in part, or that the land was not acquired for the sole use and benefit of the patentee.

The judgment of the Supreme Court of Minnesota was right, and it is

*Affirmed.*

MR. JUSTICE WHITE, with whom concur MR. JUSTICE MC-
KENNA and MR. JUSTICE HOLMES, dissenting.

The power to evade the restrictions imposed by Congress
upon the right to acquire land by preëmption, which it seems
to me must result from the construction now given to the act
of Congress as applied to the contract in controversy, causes
me to state the reasons for my dissent.

There is no controversy as to the applicable statute, and no
question of fact as to the existence and terms of the contract.
The bald question, therefore, is, Was the contract in conflict
with the requirements of section 2262, Rev. Stat.?

By that section the preëmptor, before being allowed to enter
land, was obliged to make oath, as follows:

"   .   .   .   That he has not settled upon and improved such
land to sell the same on speculation, but in good faith to ap-
propriate it to his own exclusive use; and that he has not,
directly or indirectly, made any agreement or contract, in any
way or manner, with any person whatsoever, by which the
title which he might acquire from the Government of the
United States should inure in whole or in part to the benefit
of any person except himself;   .   .   ."

By the contract here in question, which was entered into
prior to the making of the statutory affidavit, the defendants
in error, and one other person—whose interest has since been
acquired by one of the defendants in error—agreed to pay
one-fourth part of the expenses of the plaintiff in error, the
proposed preëmptor, to be incurred by him in perfecting his
entry, he, on the other hand, agreeing to pay one hundred
dollars in cash "for locating him on said land," and binding
himself to give to the other parties to the agreement "one-
fourth part of the price and proceeds that may hereafter be
obtained for the sale of said land after he has obtained title
thereto from the United States, deducting the one-fourth
expense as above provided, and can find a purchaser for and
sell the same at its proper value."

My mind cannot perceive how this contract can be held valid, testing its provisions by the statutory prohibitions, for it is settled that the requirement of specific statements in the affidavit implies a prohibition against the doing of that which the preëmptor must swear in the affidavit that he had not done.

Let me consider what the statute thus requires the preëmptor to swear, in connection with the contract, in order to test the conflict between them. The preëmptor must swear "that he has not settled upon and improved such land to sell the same on speculation, but in good faith to appropriate it to his own exclusive use." Could this statement have been truthfully made in view of the agreement by which the preëmptor bound himself after his purchase, if he sold the land, to pay to the other parties to the contract one-fourth part of the purchase price? Further, the statute requires the preëmptor to swear "that he has not, directly or indirectly, made any agreement or contract, in any way or manner, with any person whatsoever, by which the title which he might acquire from the Government of the United States should inure in whole or in part to the benefit of any person except himself." Was the affidavit made by the preëmptor in this case true when, at the time it was made, he had executed a contract or agreement by which, when the property was sold, one-fourth of the price should go to the benefit of the other parties to this contract? Concede that technically the contract did not purport to be an agreement on the part of the preëmptor to convey the legal title to one-fourth part of the land to the other parties to the agreement, can it in reason be said that the agreement did not directly or indirectly provide that the title when acquired should inure in whole or in part to the benefit of other contracting parties? To my mind the statute seems so plain and the terms of the contract to be so clearly in violation of its provisions that there can reasonably be no room for construction.

But it is said the statute simply prohibits agreements on

the part of the preëmptor, by which the title which he might acquire would inure in whole or in part to the benefit of any other person than himself; therefore, to constitute a violation of the statute, it must be found that the contract bound the preëmptor, after he had acquired the land, to convey a one-fourth interest in the title to the land. But this disregards the fact that the statute expressly forbids the doing of the prohibited thing, either "directly or indirectly," and prohibits "any agreement or contract," in any way or manner whatsoever, by which the title to be derived from the Government of the United States should inure, in whole or in part, to the benefit of any person except the preëmptor. It is clear, to my mind, that the words "directly or indirectly and in any manner" were obviously intended to embrace evasions and subterfuges by which the policy of the statute might be frustrated—that is, the prohibition against giving to another person than the preëmptor the benefit, in whole or in part, of the results of acquiring the land from the United States.

In *Anderson* v. *Carkins*, 135 U. S. 483, dealing with an affidavit of a homesteader, where the requirements were less stringent than exacted in preëmption cases, it was decided that the existence of an agreement to convey after patent a part of the land to another was void as against public policy. To me that case is decisive of this. It is said, however, there the obligation was to convey the land, whilst here there was no obligation on the part of the preëmptor to convey or to sell the land after he acquired it, but only an obligation if he did sell to pay the one-fourth of the proceeds. But it cannot be meant by this to say that there was no contract, because the agreement was so purely potestative on the part of the preëmptor as not to imply an obligation, since the contract is enforced by the decree now rendered. Suppose, however, that the contract could be divided and held to imply an obligation to pay over to another a portion of the purchase price, after the obtaining of a patent, only in case the preëmptor chose to sell, does such construction relieve the contract from

the prohibitions of the statute? It seems to me not, because to so hold would simply be to permit mere form and not substance to control. In *Pollock* v. *Farmers' Loan & Trust Co.*, 157 U. S. 429, the question was whether Congress could, in levying an income tax, include as part of the taxable income revenues derived from real estate. It was held that it could not be done, because substance was to control, and that to include rents in the income taxed was to impose a direct burden on the owner of the real estate. After quoting from Co. Lit. 45, the declaration "For what is the land but the profits thereof," and a passage in Jarman on Wills, stating that a devise of the rents and profits or of the income of lands passes the land itself, both at law and in equity, the court said (p. 581):

"The real question is, is there any basis upon which to rest the contention that real estate belongs to one of the two great classes of taxes, and the rent or income which is the incident of its ownership belongs to the other? We are unable to perceive any ground for the alleged distinction. An annual tax upon the annual value or annual user of real estate appears to us the same in substance as an annual tax on the real estate, which would be paid out of the rent or income."

This being the rule settled by this court, simply as to the right to receive the fruits of real estate, I do not perceive why, in view of the sweeping prohibitions of the act of Congress, the existence of a continued obligation to pay over the price of real estate to another person when sold, does not amount to an agreement giving to such person, at least indirectly, an interest in the land itself.

Having said that, in my opinion, there was no ambiguity in the statute as applied to the contract, it seems to me unnecessary to consider the decided cases. But I refer briefly to them. True it is that there are rulings of state courts and of the Land Department, holding that an agreement to execute a mortgage upon preëmpted land is not within the prohibition of the statute. When the opinions so holding are analyzed it will be seen that they proceed upon the theory

that the spirit of the statute does not embrace transactions of that character. For the purposes of this case, however, it does not seem to me essential to say whether or not such rulings are correct, as an agreement to mortgage to repay a given sum advanced, to enable the preëmptor to improve the land, might well be held not to be within the spirit of the prohibitions of the statute, and yet such rulings would not be controlling as to an agreement like the one here in question, especially if the contract is construed as amounting to a perpetual obligation to transfer to a third person upon a sale of the land a given portion of the price. Such a contract at once puts the person in whose favor it is made in the attitude, not of a lender entitled to receive back his loan with simple interest, but in the position of a speculator who is to benefit from the enhancement in value of the land which may arise in the future, without reference to the amount of any expenditure by him made, a character of transaction which it was the express purpose of the act of Congress to forbid. *Myers* v. *Croft,* 13 Wall. 291, 295. And from another point of view such a transaction puts the preëmptor making it in a position where his plain interest is not to improve and develop the land to its full capacity, because the labor expended for that purpose would ultimately inure in case of a sale of the land to the benefit of a third person.

Deeming that the contract in question was within the prohibitions of the act of Congress and void as against public policy, I do not think the court should lend its aid to its enforcement, and I therefore dissent, and am authorized to state that MR. JUSTICE McKENNA and MR. JUSTICE HOLMES concur therein.