**9 P.(2d) 695**

**SANTA FÉ, S. J. & N. R. R. v. HELMICK,**
District Judge, et al.

*No. 3764.*

Supreme Court of New Mexico.
March 23, 1932.

Raymond R. Ryan, of Albuquerque, for petitioner.

Reed Holloman, of Santa Fé, for respondents.

SADLER, J.

This is an original application in this court for prohibition against the district court of the Second judicial district sitting within and for Sandoval county, and Milton J. Helmick, as judge thereof. Petitioner is a New Mexico corporation heretofore operating a short line of railway between the towns of San Ysidro and Tilden in Sandoval county. On October 14, 1931, pursuant to a complaint filed by one J. G. Cleary, the district court aforesaid appointed a temporary receiver of said line of railway to take charge of and operate the same for the purpose of determining whether it could be operated without an ultimate loss. Later, and upon notice to petitioner, the receivership was by court order continued and made permanent for the purposes thereof.

Cleary, the applicant for appointment of said receiver, alleged himself to be a stock-

holder of San Juan Coal & Coke Company, operating a coal mine on said line of railway, the continued operation of which was essential, as alleged, to afford an outlet for its coal. He further alleged petitioner was a common carrier lying wholly within this state, functioning under a franchise or charter granted by the state to operate said railroad; that it had never surrendered its charter, nor made application to the State Corporation Commission for consent to discontinue operations, but had wholly abandoned and discontinued the operation of said railroad.

Petitioner herein did not appear to the complaint, and the temporary receiver was appointed without proper notice to it as appears from the undenied allegations of the petition for prohibition. However, the order continuing and perpetuating the receivership, entered November 17, 1931, recites proper notice and nonappearance of petitioner. In fact, it is admitted that petitioner has never appeared in the receivership proceedings, at least up to the time of filing its petition herein.

In addition to appointing a receiver upon said complaint as aforesaid, the court also in the same order enjoined the petitioner from exercising any of its corporate privileges or franchises and from collecting or receiving any debts, or paying out, selling, assigning, or interfering with any of its estate, moneys, funds, lands, tenements, or effects, until the court should otherwise order.

On December 28, 1931, upon an ex parte application filed in said cause by the receiver aforesaid, alleging that none of the books and records of petitioner had been delivered to him, the court ordered one T. P. Gallagher, charged as being in possession of same, to deliver the books, records, papers, minutes of the board of directors, stock books, or other books and records of petitioner, into the receiver's hands, or within three days after service of said order to show cause before the court why he had not done so. On the same day, whether by reason of a disclaimer of possession by Gallagher of said records or otherwise does not appear, the receiver filed a separate application averring the nondelivery of said records to him, and that he was unable to ascertain who had the physical possession of the same, and praying an order directed to the sheriff commanding him to take possession of such records wherever found and deliver them to the receiver. This application was not acted upon, and the return day of the order to show cause issued against Gallagher had not expired, when the petition herein was filed.

The court also on the same day, December 28, 1931, upon the written application of the receiver filed in said cause, and ex parte, authorized the issuance of receiver's certificates in an amount not to exceed $10,000 to constitute a lien on the property of petitioner coming into the receiver's hands, for the purpose of obtaining revenue to operate said railroad and to pay claims properly and legally incurred in the operation and maintenance thereof.

At this point in the history of said cause, our alternative writ of prohibition, issued upon petitioner's application, staying further proceedings in the trial court looking to the enforcement of the injunction against petitioner exercising its corporate privileges and franchises, restraining the enforcement against Gallagher or any other officer or agent of petitioner, of the order to produce and deliver said books and records, and also staying any further steps looking to the issuance or authorization of said receiver's certificates.

It requires but a casual reading of the complaint in the receivership proceeding to disclose that the plaintiff therein invoked the remedy provided by section 116-406, Comp. 1929, being section 6, ch. 200, Laws 1921. The respondents concede this. It is quite as apparent that the injunctive portion of the order appointing a receiver, in which petitioner among other things is enjoined from exercising any of its corporate privileges and franchises, is at least referable to section 32-174, Comp. 1929, being a portion of the relief permissible upon proceeding against a corporation under the Corporation Insolvency Act. Petitioner takes the position that, since the complaint in receivership discloses that the plaintiff therein was proceeding under said section 116-406, the receivership is a limited one instituted for the single purpose of ascertaining whether the railroad may be operated without ultimate loss, and subject to the specific statutory injunction that such receiver may not sell or dispose of the property; that since receiver's certificates

are to create a lien on the property in satisfaction of which it could ultimately be sold, to permit their issuance might result in the indirect accomplishment of something which the receiver is prohibited directly from doing. It further contends that the court was without power to compel the production and delivery to the receiver of the books and records of petitioner, and that the injunctive portion of the order appointing receiver represents an attempted exercise by the court of an excess of jurisdiction, not fairly within the scope of the facts set up in the complaint, or the relief sought as disclosed by its prayer.

The decision in one aspect, therefore, turns upon a proper construction of section 116-406, Comp. 1929, authorizing a district court upon the conditions therein named to appoint a receiver of a railroad property for the purpose of determining whether it may be operated without ultimate loss. May such a receiver under any circumstances incumber the property for the purpose of conducting the experiment authorized? In another aspect the decision will involve a determination of whether the court's orders enjoining the exercise by petitioner of corporate functions, and directing the delivery to the receiver of the corporate books and records relating to the railroad, represent an attempted exercise by the court of an excess of jurisdiction. We shall decide these points in the order of their statement just made.

It would go without saying that, in so far as petitioner questions the order authorizing receiver's certificates for want of notice

thereon to interested parties, a serious question is presented. 1 Elliott on Railroads (3d Ed.) § 680. Counsel for respondents does not seek to sustain the court's power to make such order against this defect, and announces that no sale of receiver's certificates will be had or attempted, except as based on proper application and due notice thereon. Nevertheless, both parties have invoked a hearing on the merits of the question of the court's power under the statute to authorize receiver's certificates in any event, and we shall so consider the matter.

The fifth regular session of the state Legislature by chapter 200, Laws of 1921 (sections 116-401 to 116-409, Comp. 1929), enacted that it should be unlawful for any corporation, individual, partnership, or association operating as a common carrier any railroad or part thereof, lying wholly within the state of New Mexico, to discontinue the operation thereof without first obtaining an order from the State Corporation Commission consenting thereto. Provision is made in the act for public hearing before the commission upon proper published notice of any application for consent to discontinue operation, at which hearing any person or persons may appear and protest. No such hearing is to be had sooner than ninety days after the filing of such petition. If consent to discontinue be granted after hearing, a like notice of such consent having been given must be published once each week for four successive weeks in a newspaper of general circulation, published in each county in which such railroad or any part thereof lies, and the consent to dis-

continue operation is not to be effective until ten days after the publication mentioned.

Thereupon, and after the granting of such consent, the state, through its Attorney General or any citizen, may institute injunction proceedings in any county in which said road or any part thereof lies to prevent such discontinuance. The court entertaining such proceedings is directed by the act to enjoin such discontinuance unless it is affirmatively shown that it is impossible to continue to operate the road without a material ultimate loss, and the fact that the income from operation is not sufficient to pay more than the operating expenses shall not be considered as showing a loss.

The act further provides for the appointment of a receiver incident to such injunction proceedings, where leave to discontinue operations has been had, or where the road has discontinued operation without such leave. Since this is the pertinent section demanding construction, we shall set it out herein as follows: "In case the injunction proceedings provided for in section 5 (116-405) herein are instituted, or in case of the discontinuance of operation either in whole or in part without first obtaining permission herein provided for, the court may, in his discretion, appoint a receiver to take charge of and operate such road for the purpose of determining whether said road can be operated without an ultimate loss. In case such receiver shall be so appointed he shall have all the power and authority of receivers in ordinary cases except he shall not have the power to sell and dispose of the property under his

administration. Such receivership shall continue for such reasonable time as may be necessary to determine the things for which he was appointed. (L. '21, Ch. 200, § 6)."

The foregoing résumé of the material provisions of the act in question discloses an effort by the Legislature to protect the paramount public interest in the continued operation of railroads serving as common carriers. The gist of the petitioner's argument is that a receiver so appointed by the court to determine whether the road may be operated without ultimate loss must start off with a clean slate, taking the physical properties of the railroad in whatever condition of repair he finds them, and thus begin and conduct his experiment. It particularly and vigorously insists that the court may not, through the issuance of receiver's certificates, in any manner incumber the property in the receiver's hands, since such act might eventually result in a sale of the property, a thing prohibited by the act in express language.

In this contention we think the petitioner is in error. The act expressly provides, touching the powers of such receiver, as follows: "In case such receiver shall be so appointed he shall have all the power and authority of receivers in ordinary cases except he shall not have the power to sell and dispose of the property under his administration."

This language, except as restricted by the very purpose of his appointment, is sufficient to clothe the receiver with the general powers of receivers in ordinary cases subject to the single limitation that he may not sell or dispose of the property. In referring the receiver's powers to those of receivers in ordinary cases, we cannot fairly exclude from such classification receivers appointed to continue operation of railroads acting as common carriers. Indeed, if the Legislature can with certainty be said to have had in mind any class of receivers in its use of the words "ordinary cases," it must have been receivers for the very kind of properties with which it was dealing. And in no class of receiverships are receiver's certificates so frequently employed to raise funds for permissible and legitimate purposes as in railroad receiverships. 1 Elliott on Railroads (3d Ed.) § 678. Though, as stated by the texts and decisions, the courts should exercise great caution in granting the power to issue them, operating as they do when lawfully issued to displace the priority of existing liens. Id. § 679. But it is not our province in this proceeding to say for what purposes and in what amounts they may be issued, but rather whether in this kind of receivership the trial court has jurisdiction to authorize them under any conditions. If it has such power, obviously this is not an appropriate proceeding in which to test the validity of its exercise.

We do not feel that the express denial in the act of power in the receiver to sell and dispose of the property precludes the existence of a separate power in the court to authorize the issuance of receiver's certificates for a proper purpose and upon a proper showing. Such a prohibition would have been implied, if not expressed, considering the purpose for which the receiver is appointed.

Nevertheless, giving significance to the language of the prohibition against sale, we are yet unable to conclude that it denies the power here challenged. It has been often held that the creation by mortgage of a lien on land is not an "alienation" within the meaning of the United States Public Land Laws prohibiting alienation or agreements to alienate pending acquisition of title by government patent. Hafemann v. Gross, 199 U. S. 342, 26 S. Ct. 80, 50 L. Ed. 220; Worthington v. Tipton, 24 N. M. 89, 172 P. 1048. An application of the same principle of construction would warrant us in holding that the prohibition against sale and disposal is not violated by creation of the lien attaching in favor of receiver's certificates.

Therefore, if the power challenged is to be denied, we must find the reason for such denial elsewhere than in the mere presence in the statute of the prohibition against sale. Looking elsewhere, while we find many reasons dictating that the power claimed should be sparingly exercised, we find no good or sufficient reason for denying it altogether. On the contrary, if the power does not exist to a reasonable and limited extent, then the Legislature has enacted a police measure which is wholly futile. It could not have been contemplated that the receiver would advance the funds with which to commence operations. It could not have been supposed that train crews and other necessary employees would continue work without an assurance of pay. They are entitled to semi-monthly pay days. Section 32-303, Comp. 1929. And it would be going far to assume that a road whose previous management had brought it to a stage of discontinuance could, starting from zero financially, be placed upon a paying basis within so short a time under a receiver as not to require the aid of credit.

The settled rules of judicial construction require that possible interpretation of a statute which will render it effective, prevent absurdity, and accomplish the legislative purpose. State v. Southern Pacific Co., 34 N. M. 306, 281 P. 29. To sustain petitioner's interpretation of the statute in question in our view would more often than otherwise prevent altogether the test which it was the purpose of the Legislature to secure; namely, to ascertain whether the road can be operated without ultimate loss. So viewing the matter, we cannot deny to the trial court a power under the statute in some cases so essential to giving the statute any operative effect whatever. But a receivership largely financed and conducted during its continuance on the security of the property, it is easy to see, would not be furnishing the test which the statute contemplates, and would work a grave injustice to the road's owners and investors.

We find nothing in the court's orders designed to place in the receiver's hands the corporate books and records which would warrant us in interfering by prohibition. The primary purpose of this receivership is to ascertain whether the road can be operated without ultimate loss. How is the receiver to accomplish this purpose unless he may study, analyze, and profit by the history of its past

operation? A mere reference to section 116-138, Comp. 1929, showing the character and extent of corporate records required to be made and preserved by domestic railroad companies. will demonstrate the importance of these records to a receiver appointed under this statute.

This is not a liquidating receivership, and it is not to be presumed that the trial court will compel the production of books or records not helpful or essential to the receiver in accomplishing the purposes of his appointment; or that its orders will deny petitioner access to such of said records as it may find necessary to consult in the exercise of any corporate purpose not suspended by the receivership.

█ We are convinced, however, on the final argument submitted that the court did exceed its jurisdiction, as invoked by the complaint for receivership filed, in employing in its order appointing receiver the broad sweeping injunction authorized by section 32-174, Comp. 1929, upon the initiation of receivership incident to dissolution and winding up. We may even concede that the appointment of a receiver operates as an injunction against acts of the corporation, its officers and agents, interfering in any manner with the property placed under his management and control. High on Receivers (4th Ed.) §§ 290, 750; Gravenstine's Appeal, 49 Pa. 310; Treat v. Pennsylvania Mut. Life Ins. Co., 199 Pa. 326, 49 A. 84, 85 Am. St. Rep. 788; Linville v. Hadden, 88 Md. 594, 41 A. 1097, 43 L. R. A. 222.

But this proceeding manifestly constitutes no attack on the corporate existence of the company. It is not instituted for dissolution and winding up of the corporation. The receiver is not invested with title to the corporate property. He merely has its custody and management over a limited period for the special purpose of making the test ordered by the statute. Obviously a variety of corporate acts and functions might still be performed by the company, so long as they are not of a character or nature calculated to interfere with, hamper, or impede the management and control by the receiver of the property in his hands. Many authorities recognize this right as remaining in the corporation upon the appointment of a receiver for a special purpose. Ohio & M. R. Co. v. Russell, 115 Ill. 52, 3 N. E. 561, 563; Decker v. Gardner, 124 N. Y. 334, 26 N. E. 814, 816, 11 L. R. A. 480; Standard Roller Bearing Co. v. Hess-Bright Mfg. Co. (D. C.) 264 F. 516, affirmed (C. C. A.) 275 F. 916; Detroit & T. S. L. R. Co. v. Campbell, 140 Mich. 384, 103 N. W. 856; Fountain v. Stickney, 145 Iowa, 167, 123 N. W. 947, 139 Am. St. Rep. 410; Arkansas Cent. R. Co. v. State, 72 Ark. 252, 79 S. W. 772; Paddack v. Staley, 13 Colo. App. 363, 58 P. 363.

In Ohio & M. R. Co. v. Russell, supra, the Supreme Court of Illinois said: "The effect of the appointment of the receiver is simply to give him the temporary management of the railroad, under the direction of the court, instead of the manager appointed by the directors of the corporation. It is that, and nothing more. As the corporation still exists, it may still exercise as before its franchises, so it does not interfere with the rightful man-

agement of the road by the receiver, so far as his duties are defined by the court appointing him. No doubt it may do many corporate acts, and certainly it can do all things necessary to preserve its legal existence, notwithstanding the appointment of the receiver, to whom the temporary management of the road is given. Otherwise the appointment of the receiver would be tantamount to a dissolution of the corporation."

And in Decker v. Gardner, supra, the New York Court of Appeals expressed similar views. It said: "By the same order the corporation was enjoined from interfering with said receiver in the possession and management of the railroad property. He did not represent the corporation, or supersede it in the exercise of its powers, except in relation to the possession and management of the property committed to his charge. Notwithstanding his appointment, the corporation was clothed with its franchises, and still existed. It could still exercise its power, so it did not interfere with the management of the railroad. It could do many corporate acts, and it could do all things necessary to preserve its legal existence. It could sue and be sued, and was liable for its acts and upon its contracts and covenants the same as if the receiver had not been appointed."

In the present case the complaint upon which receivership was had contained no prayer for injunctive relief. The petitioner defaulted. While so much of the injunction granted as is calculated to protect the receiver in his custody, management, and control of all the property and assets of the road, is fairly within the scope of the relief predicated in the complaint, so much of it as goes beyond that object represents an exercise by the court of an excess of jurisdiction not fairly invoked by the complaint before it. We had occasion recently to discuss this subject in Walls v. Erupcion Min. Co., 36 N. M. 15, 6 P.(2d) 1021.

It perhaps should be mentioned before closing that counsel for petitioner in argument has suggested the invalidity of this statute on constitutional grounds. He has, however, disclaimed reliance upon any such ground in support of the writ and takes a position in argument which presupposes its validity. In our disposition of the cause the validity of the statute has therefore been assumed.

The present injunction in its breadth and scope, at least, was outside the jurisdiction invoked or permissible in this kind of receivership. The alternative writ of prohibition heretofore granted will therefore be made permanent against any action by the trial court looking to its enforcement. This will be without prejudice to the rights of the receiver, upon proper application, to have an appropriate injunctive order, in accordance with the views herein expressed, protecting him against the petitioner, its officers and agents, in his management and control of the property in question. Counsel for respondents having assured the court that no effort will be made to issue or sell receiver's certificates except upon new application and proper notice, the alternative writ heretofore issued will be dissolved in so far as it restrains the trial court

from making or approving any order for the issuance of receiver's certificates and constituting them a lien on the property in the receiver's custody and control; also in so far as it restrains the trial court from enforcing appropriate orders for the delivery to said receiver of the books and records of the petitioner appertaining to said property. The petitioner will recover its costs.

It is so ordered.

BICKLEY, C. J., and WATSON, J., concur.

PARKER and HUDSPETH, JJ., did not participate.